UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARIO DOTSON,

    Petitioner,

v.                                Case No. 2:04-cv-92
                                       HON. GORDON J. QUIST

GERALD HOFBAUER,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Mario Dotson filed this petition for writ of habeas corpus challenging the validity of his state court convictions of assault with intent to rob while armed and felony firearm. Petitioner was convicted after a plea of not guilty and on May 22, 2001, was sentenced to a prison term of four to fifteen years in prison for assault with intent to rob while armed, and two years in prison for the felony firearm charge.

Petitioner maintains that his conviction was obtained in violation of his federal rights. Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

A summary of the facts in this case is as follows: Petitioner was living with his girlfriend Mary Jo Washington, her cousin Nathaniel Coklow, and her aunt Norma Harris in Ms. Harris's house. (Transcript of Bench Trial, Docket #12, at 9.) On October 27, 2000, Ms. Harris

arrived home from work, saw Petitioner and Ms. Washington briefly, left to visit her friend Tootie, then proceeded to visit Linda Evans, who held money for Ms. Harris. (*Id*. at 16.) Ms. Harris arrived home between 11:00 p.m. and 11:30 p.m., and went into her room. (*Id*. at 16-17.) Petitioner and Ms. Washington then entered her room and Ms. Washington asked Ms. Harris for money. (*Id*. at 17.) Ms. Harris said she did not have any, and Petitioner replied by saying that she was lying. (*Id*.) Ms. Washington then started hitting and shoving her, while Petitioner started going through her drawers, purse, and other belongings. (*Id*. at 18.) Ms. Harris stated specifically that they went through her clothes and purse. (*Id*. at 22.) Ms. Washington then began to hit Ms. Harris on the face and back, while Petitioner encouraged her. (*Id*. at 19.) Ms. Harris told the two that she left all of her money at Ms. Evans's house. (*Id.*) Ms. Washington told Petitioner to go downstairs to get something, and Petitioner returned with a rifle. (*Id.* at 20-21.) Petitioner then pointed the rifle in Ms. Harris's direction, while Ms. Washington said that she should shoot Ms. Harris. (*Id.*) Ms. Harris testified that she felt scared and thought that she might be killed. (*Id.* at 29.) Ms. Harris had opened a window during a period where Petitioner and Ms. Washington had briefly left the room, but did not escape through it. (*Id.* at 21.) Petitioner and Ms. Washington then returned to the room, Petitioner said for Ms. Washington to "beat her ass some more," and Ms. Washington hit Ms. Harris again. (*Id.* at 22.) Ms. Harris then said that she would go to Ms. Evans's house to get money if Petitioner and Ms. Washington would stop beating her. (*Id.*) Ms. Washington and Petitioner refused her request. Ms. Harris said that she would get Petitioner and Ms. Washington money in the morning. They ceased the assault, and Ms. Harris went to bed. (*Id*. at 23.) The next day, Ms. Harris reported the assault to the police. (*Id*. at 25.) After reporting the incident to the police and returning to Ms. Evans's house, Ms. Harris saw Petitioner and Ms. Washington pull up in Ms. Washington's car. (*Id*. at 27.) Petitioner had a gun in his hand, and said to Ms. Harris, "We'll be back to F all of

ya'll up." (*Id.*) Ms. Harris called the police, and the police arrested Ms. Washington and Petitioner at Ms. Harris's home. (*Id*. at 28.)

Petitioner has raised two issues in his petition. Petitioner claims that the evidence presented at trial was insufficient to support a conviction of assault with intent to commit armed robbery. Petitioner also claims that he was denied the right to effective assistance of counsel due to the failure of counsel to object to the admission of irrelevant evidence.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362 (2000). Recently, the Supreme Court held that a decision of the state court

is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.*

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547

(1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999).

Petitioner argues that there existed insufficient evidence to support his conviction for assault with intent to rob while armed. The Michigan Court of Appeals rejected this claim, concluding that "[d]efendant was searching for money while committing the assault, and he was armed." Michigan Court of Appeals' Opinion, Docket #15 at 1.

The elements of assault with intent to commit armed robbery are: (1) an assault with force or violence, (2) an intent to rob or steal, and (3) a defendant being armed. *People v Smith*, 152 Mich App 756, 761, 94 NW2d 94 (1986). Petitioner has failed to show an unreasonable determination of the facts in light of the evidence presented in the state court proceeding as it applies to this charge. Petitioner argues that the gun was brought into the picture after he and his co-defendant had gone through Ms. Harris's belongings. (Petition, Docket #1 at 5.) He also argues

that he did not threaten Ms. Harris with the gun, nor did he touch her on the night in question. (*Id.*) While Petitioner's contentions are supported by the record, the record also supports the trial court's conclusion. Ms. Harris stated that Petitioner pointed the gun at her. (Transcript of Bench Trial, Docket #12, at 21.) She stated that she was scared. (*Id.* at 29.) She was also beaten by Petitioner's accomplice, Mary Jo Washington. (*Id.* at 18.) This evidence shows that Petitioner placed Ms. Harris in reasonable apprehension of immediate bodily harm. The record is sufficient to support the first element, assault with force or violence. The second element, an intent to rob or steal, is supported by Ms. Harris's testimony that Petitioner and his co-defendant stated that they were looking for money from her. (*Id.* at 17.) This also satisfies the specific intent requirement of the statute. After Petitioner obtained a gun, he and his co-defendant continued to search Ms. Harris's room, person, and possessions for money. (*Id.* at 22.) Thus, the gun was present during the commission of the robbery, which satisfies the third element of the offense. Based on this evidence, the trial court's conclusion was objectively reasonable. Petitioner has offered no evidence and makes no argument to rebut the presumption that this evidence was correctly admitted. The ruling of the Michigan Court of Appeals was not contrary to clearly established federal law, nor did it contradict a factual precedent or a previously decided issue of law. The evidence presented at trial was sufficient to support a conviction.

Similarly, the Michigan Court of Appeals denied Petitioner's ineffective assistance of counsel claim. The court concluded that counsel did not err in failing to object to the testimony of contact with Petitioner after the crime. The court concluded that the testimony was relevant and, more importantly, its admission was not shown to affect the outcome of the trial.

To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate: (1) that counsel's errors were so serious that counsel was not functioning as counsel

- 6 -

guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See Id.*

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). Petitioner alleges that defense counsel should have objected to the admission of testimony regarding the behavior of the petitioner and his co-defendant on the day after the assault and robbery was committed, as it was irrelevant to the crime in question. (Petition, Docket #1, at 5.) Ms. Harris testified that Petitioner and his co-defendant drove up next to Ms. Harris and further threatened her with a gun. The testimony was relevant. However, even without the testimony, there was sufficient evidence to convict Petitioner. Petitioner offers no evidence to show that the admission of the testimony in question prejudiced the fact-finder. Petitioner has failed to establish a denial of effective assistance of counsel. Moreover, Petitioner has failed to show that the Michigan Court of Appeals' decision was unreasonable.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: June 1, 2006